**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**ORANGEBURG DIVISION**

| | | |
|---|---|---|
| ROMAINE HOWARD, III, | ) | |
| | ) | No. 5:18-cv-1363-DCN-KDW |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| ANDREW SAUL, Acting Commissioner | ) | |
| of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

  This matter is before the court on Magistrate Judge Kaymani D. West's Report
and Recommendation ("R&R") that the court affirm Acting Commissioner of Social
Security Andrew Saul's ("Commissioner") decision denying claimant Romaine Howard,
III's ("Howard") application for supplemental security income ("SSI") and disability
insurance benefits ("DIB"). Howard filed objections to the R&R. For the reasons set
forth below, the court declines to adopt the R&R, reverses the decision of the
Commissioner, and remands the matter back to the Commissioner for further
administrative action pursuant to 42 U.S.C. § 405(g).

## I.  BACKGROUND

  Unless otherwise noted, the following background is drawn from the R&R.

### A.  Procedural History

  Howard filed an application for SSI and DIB on June 27, 2014, alleging he had
been disabled since July 15, 2011. The Social Security Administration ("the Agency")

---

[1] Andrew Saul is now the Acting Commissioner of Social Security. Pursuant to
Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul is automatically
substituted for Nancy A. Berryhill, former Commissioner, as the defendant in this
lawsuit.

denied Howard's application both initially and on reconsideration. Howard requested a hearing before an administrative law judge ("ALJ"), and ALJ Linda Diane Taylor presided over a hearing held on February 2, 2017. In a decision issued on May 18, 2017, the ALJ determined that Howard was not disabled. Howard requested Appeals Council review of the ALJ's decision on July 12, 2017. This decision became the final decision of the Commissioner when the Appeals Council denied further review on March 13, 2018.

On May 18, 2018, Howard filed this action seeking review of the ALJ's decision, ECF No. 1. The magistrate judge issued an R&R on July 24, 2019, recommending that this court affirm the ALJ's decision, ECF No. 25. Howard filed objections to the R&R on August 7, 2019, ECF No. 27, to which the Commissioner responded on August 21, 2019, ECF No. 28. The matter is now ripe for review.

### B. Medical History

Because the parties are familiar with Howard's medical history, the court dispenses with a lengthy recitation thereof and instead briefly recounts those facts material to its review of Howard's objections. Howard was twenty-nine years old at the time of his alleged disability onset date. Howard completed four or more years of college. He stopped working in April of 2012 because of his medical condition, which he listed as a mental illness. Howard has a varied work history, including work as a cashier, a driver's helper, an actor, a head bookkeeper, and a sales representative/office manager. In disability reports subsequently submitted by Howard, he has indicated his condition has not changed.

## C. ALJ's Decision

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. The Social Security regulations establish a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520, 416.920. Under this process, the ALJ must determine whether the claimant: (1) is currently engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment which equals an impairment contained in 20 C.F.R. § 404, Subpt. P, App'x 1, which warrants a finding of disability without considering vocational factors; (4) if not, whether the claimant has an impairment which prevents him or her from performing past relevant work; and (5) if so, whether the claimant is able to perform other work considering both his or her remaining physical and mental capacities (defined by his or her residual functional capacity) and his or her vocational capabilities (age, education, and past work experience) to adjust to a new job. See 20 C.F.R. § 404.1520; Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981). The applicant bears the burden of proof during the first four steps of the inquiry, while the burden shifts to the Commissioner for the final step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)). "If an applicant's claim fails at any step of the [sequential evaluation] process, the ALJ need not advance to the subsequent steps." Id. (citing Hunter, 993 F.2d at 35).

To determine whether Howard was disabled from his alleged onset date of June 15, 2011 until the February 2, 2015, the date of his hearing, the ALJ employed the statutorily required five-step evaluation process. At step one, the ALJ found that Howard did not engage in substantial gainful employment during the period between his alleged onset date and his date of last insured. Tr. 17. At step two, the ALJ determined that Howard suffered from the severe impairments of bipolar disorder and generalized anxiety disorder. Id. At step three, the ALJ found that Howard's impairments or combination thereof did not meet or medically equal one of the impairments listed in the Agency's Listing of Impairments. Tr. 18. Before reaching the fourth step, the ALJ determined that Howard retained the residual functional capacity to "perform a full range of work at all exertional levels", subject to the certain non-exertional limitations: "[Howard] can perform simple, routine tasks and make simple work-related decisions; can frequently respond appropriately to supervisors, co-workers and the public; and time off task can be accommodated by normal breaks." Tr. 20. The ALJ found, at the fourth step, that Howard was unable to perform any past relevant work. Tr. 28. Finally, at the fifth step, the ALJ found that, considering Howard's age, education, work experience, and RFC, he could perform jobs existing in significant numbers in the national economy; therefore, the ALJ concluded that Howard was not disabled under the meaning of the Social Security Act during the period at issue. Tr. 28-30.

## II.  STANDARD

This court is charged with conducting a de novo review of any portion of the Magistrate Judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of

the Magistrate Judge. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140, 149-50 (1985). The recommendation of the Magistrate Judge carries no presumptive weight, and the responsibility to make a final determination rests with this court. <u>Mathews v. Weber</u>, 423 U.S. 261, 270-71 (1976).

Judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied." <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Id.</u> (internal citations omitted). "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence." <u>Id.</u> Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]," not on the reviewing court. <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996) (internal citation omitted).

Although the district court's role is limited, "it does not follow . . . that the findings of the administrative agency are to be mechanically accepted. The statutorily granted review contemplates more than an uncritical rubber stamping of the administrative action." <u>Flack v. Cohen</u>, 413 F.2d 278, 279 (4th Cir. 1969). Further, although the court will not reweigh the evidence considered, the Commissioner's findings of fact are not binding where they are based on an improper legal standard. <u>Coffman v. Bowen</u>, 829 F.2d 514, 519 (4th Cir. 1987).

### III.  DISCUSSION

Howard objects to the R&R on three grounds, arguing that the Magistrate Judge erred in:  (1) finding that the ALJ had a proper evidentiary basis for assigning little weight to the opinion of Howard's treating physician, (2) finding that evidence of Howard's improved condition allows a conclusion that he can return to sustained work activity, and (3) finding that the ALJ was not required to recontact one of Howard's treating physicians.  With respect to Howard's second objection, the court notes that the R&R does not make a ruling on whether Howard can return to sustained work activity.  Instead, it finds that the ALJ properly considered evidence of Howard's improving condition as a basis for giving his treating physician's opinion little weight.  Therefore, the court will consider Howard's second objection together with his first objection, as both raise the same issue:  whether the ALJ's decision to afford the opinion of Howard's treating physician little weight was proper.

Before turning to the substance of this case, the court must first address a procedural issue raised by the Commissioner.  In reply to Howard's objections, the Commissioner argues that Howard failed to raise specific objections to the R&R because he merely reiterates to this court arguments raised in front of, and rejected by, the Magistrate Judge.  In so arguing, the Commissioner relies of <u>Nicholas v. Colvin</u>, which states that "a mere restatement of the arguments raised in the summary judgment filings does not constitute an objection for the purposes of district court review."  100 F. Supp.

3d 487, 497 (E. D. Va. Mar. 13, 2015);  ECF No. 28 at 3.  Commissioner's argument is without merit.

Within fourteen days after being served with a copy of the magistrate judge's proposed findings and recommendations, "any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court."  28 U.S.C. § 636(b)(2).  "Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only those portions of the report or specified proposed findings or recommendations to which objection is made."  United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007) (citing 28 U.S.C. § 636(b)(1)) (internal quotation marks omitted).  Courts will not find specific objections where parties "merely restate word for word or rehash the same arguments presented in [their] filings related to summary judgment."  Abou-Hussein v. Mabus, 2010 WL 4340935, at *1 (D.S.C. Oct. 28, 2010), aff'd, 414 F. App'x 518 (4th Cir. 2011).

Here, Howard has raised specific objections to the findings of the Magistrate Judge.  His objections clearly state, "Plaintiff objects to the Magistrate Judge's finding that the ALJ gave good reasons for rejecting the opinion of Dr. Fermo stating that Mr. Howard could not sustain full time work."  ECF No. 27 at 1.  This is a specific objection to a particular finding of the R&R, based on a relevant point of law.  The mere fact that Howard argued this issue to the Magistrate Judge, who rejected it, does not mean that he is precluded from objecting to her finding on that issue.  Such a procedural rule would have the confusing effect of encouraging parties not to argue disputed points of law in

front of the Magistrate Judge. Moreover, the rule would undermine the court's duty to undertake a de novo review of R&Rs. See Mathews v. Weber, 423 U.S. at 270-71. Therefore, the court will review de novo the findings of the R&R to which Howard properly objected.

### A. Evaluation of Dr. Fermo's Opinion

Howard's first two objections allege that the R&R erred in finding that the ALJ had a proper evidentiary basis for assigning Howard's treating physician's opinion "little weight" under the treating physician rule. Dr. Ricardo Fermo, MD, has been Howard's treating physician since July 17, 2012. As such, Howard argues, the ALJ should have afforded his opinion controlling weight. While the court cannot reweigh the evidence before the ALJ, it has a duty to determine whether such evidence provided the ALJ a legally sufficient basis for assigning Dr. Fermo's opinion little weight. On this issue the court makes two findings: (1) under the treating physician rule, Dr. Fermo's opinion was entitled to controlling weight, and (2) even if Dr. Fermo's opinion was not entitled to controlling weight, the factors the ALJ was required to consider precluded her from according the opinion little weight.

Under the "treating physician rule," a treating physician's opinion is generally entitled to significant weight in the determination of disability. See Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir.1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20

C.F.R. § 404.1527(c)(2).[2]  In fact, regulations require that a treating physician's opinion

be given controlling weight if that opinion "is well-supported by medically acceptable

clinical and laboratory diagnostic techniques and is not inconsistent with the other

substantial evidence" in the record.  20 C.F.R. § 404.1527(c)(2); see Mastro v. Apfel, 270

F.3d 171, 178 (4th Cir. 2001).  "By negative implication, if a physician's opinion is not

supported by clinical evidence or if it is inconsistent with other substantial evidence, it

should be accorded significantly less weight."  Craig v. Chater, 76 F.3d 585, 590 (4th Cir.

1996).  In such a circumstance, the ALJ holds the discretion to give less weight to the

opinion of a treating physician only in the face of persuasive contrary evidence.  Mastro,

270 F.3d at 178.

On January 19, 2017, shortly before Howard's hearing in front of the ALJ, Dr.

Fermo wrote a medical source statement to the Agency that communicated his opinion

regarding Howard's ability to work.  Tr. 910-16.  Dr. Fermo's statement describes

Howard's mental impairments in great detail, with multiple-page discussions of

symptoms, triggers, examples, and effects of Howard's condition.  Based on his

---

[2] This subsection of the regulation states in full:  "Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.  If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.  When we do not give the treating source's medical opinion controlling weight, we apply the [evaluation facts] in determining the weight to give the medical opinion.  We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion."

observations and treatment, Dr Fermo concluded in his statement, "[i]t is my strong medical opinion, considering Mr. Howard's mental impairments, he would be precluded from any sustained work-related activities in a work setting on a regular and/or continuing basis." Tr. 916. Dr. Fermo's earlier treatment notes confirm that he has held this opinion throughout his treatment of Howard. See Tr. 809. The ALJ, however, "accord[ed] little weight to the opinions of Dr. Fermo" in her determination that Howard was not disabled. Tr. 27.

The ALJ based her decision not to assign Dr. Fermo's opinion controlling weight on several pieces of evidence: (1) an independent examination of Howard by a consultant psychologist; (2) Howard's activities of daily living; (3) the fact that Dr. Fermo's opinions were based, at least in part, on Howard's subjective complaints; (4) the absence of hospitalizations or urgent medical treatment; (5) the stabilization of Howard's medical condition based on his medical records; and (6) Dr. Fermo's own treatment notes, which reveal (a) periods of treatment non-compliance, (b) period of healthy mental functioning, and (c) overall improvement in Howard's condition. Tr. 27. On this issue, the narrow inquiry before the court is whether the ALJ relied upon persuasive evidence contrary to Dr. Fermo's opinion. Because the court finds that the evidence on which the ALJ relied was not contrary to Dr. Fermo's opinion, her determination to accord his opinion little weight was error.

In determining not to accord Dr. Fermo's opinion controlling weight, the ALJ relied, in part, on a one-day psychological evaluation of Howard by a consultant psychologist and his resulting report. Howard objected to the ALJ's reliance on the consultant's findings, arguing that a three-page report derived from a single

10

psychological evaluation cannot constitute persuasive evidence sufficient to contradict Dr. Fermo's opinion, which is based on over five years of psychiatric sessions with Howard, evidenced by over 200 pages of treatment notes.  It is not within the purview of this court, however, to reweigh the evidence considered by the ALJ.  But it is the duty of this court to determine whether the ALJ properly relied on the consultant psychologist's report as a basis for according Dr. Fermo's opinion little weight.  Because the psychologist's report is not contrary evidence to Dr. Fermo's opinion, the ALJ's reliance was error.

On September 24, 2014, a consultant psychologist evaluated Howard and authored a corresponding report.  Tr. 644-46.  In assessing Howard's cognitive functioning, the examining psychologist concluded that Howard "would be capable of understanding simple and complex instructions as well as performing simple and complex tasks in the workplace."  Tr. 646.  In according Dr. Fermo's opinion little weight, the ALJ relied on this bare finding of the psychologist as persuasive contrary evidence, despite according little weight to the consultant's other findings and the report's conclusion.  Tr. 27.  The ALJ's reliance is improper for two related reasons.  First, an assessment of Howard's cognitive skills is irrelevant to Dr. Fermo's opinion, and second, the report, read comprehensively, does not contradict Dr. Fermo's conclusion that Howard cannot sustain work activity.

The consultant psychologist's evaluation of Howard's cognitive abilities is irrelevant to the opinion of Dr. Fermo.  It is not Dr. Fermo's opinion that Howard cannot sustain work activity because of his poor cognitive skills.  Instead, Dr. Fermo concludes that Howard is unable to work as a result of  severe "mental impairments" that form the

basis of his mental illnesses. Tr. 808-09;[3] 912.[4] Howard's average cognitive skills have

no bearing on his ability to overcome the symptoms of his mental illness. In other words,

Howard could have elite cognitive abilities and still be unable to work based on the

debilitating effects of his mental illness. In fact, Dr. Fermo was aware of Howard's

general intelligence and above-average cognitive abilities, and yet concluded that

Howard's mental impairments nevertheless render him incapable of work activity. See

e.g., Tr. 779 ("[Howard] is able to focus, pay attention, stay on task, concentrated [sic],

remember things, sustain mental effort on tasks, be less distractible and be organized in

tasks . . . ."). Therefore, the consultant psychologist's finding that Howard possesses

average to above-average cognitive skills is not at odds with the conclusion that he

cannot work, and the ALJ has failed to explain otherwise. In fact, the evaluating

psychologist acknowledged as much in his report, finding that that Howard would

nevertheless experience difficulty in a working environment despite his cognitive

abilities.

Further, the evaluation report, read comprehensively, does not contradict Dr.

Fermo's opinion. The report goes on to state, "[Howard] would have difficulty relating

well to others in the workplace due to his report of mood swings. He would display

difficulty with stamina and persistence in the workplace due to his report of low energy

and attention/concentration problems." Tr. 646. Despite her reliance on his other

---

[3] "The patient also has severe impairment of social functioning as evident by
restriction of activities of daily living, loss of prior adaptive functioning, coping skills
and inability to function independently outside of highly supportive living arrangement."
[4] "Mr. Howard has had a major change in character as a result of his depression
and has been unable to return to [his] normal baseline level of function for any short
period of time."

finding, the ALJ accorded this finding of the consultant psychologist "little weight." Tr. 27. An ALJ may not dissect a medical professional's report of a psychological examination and extract only those details that support her finding. Read comprehensively, the report states that Howard has average cognitive skills but struggles with other metal impairments. Dr. Fermo's opinion is that these mental impairments prohibit Howard from work. Clearly, the report cannot be construed as evidence that is persuasively contrary to Dr. Fermo's opinions. Therefore, the ALJ erred in relying on the report as a basis to deviate from Dr. Fermo's opinion.

The ALJ further relied on Howard's activities of daily living ("ADLs"), as "inconsistent with the limitations assessed and symptoms described by Dr. Fermo . . . ." Tr. 27. The record contains evidence that Howard volunteered at the YMCA, Tr. 678; regularly went shopping, Tr. 664; regularly drove a car, Tr. 216; planned to defend a dissertation, Tr. 864; worked occasionally for his parents, Tr. 711; and attended a pub twice weekly for trivia, Tr. 665. Given the nature of Howard's mental illness, these activities are not inconsistent with Dr. Fermo's opinion. The record makes clear that the hallmark of Howard's mental illness has been instability. Treatment notes indicate that Howard's life has been defined by the sporadic fluctuation between good periods, in which Howard works with his parents or volunteers at the YMCA, and bad periods, in which Howard sleeps for days at a time, goes days without sleep, or vacillates in between reality and his imagination. Some basic functioning, including the ability to shop, drive, and attend trivia, does not contradict Dr. Fermo's opinion. In fact, Dr. Fermo, in his opinion letter, notes that instability is inherent in Howard's mental impairments, as periods of functioning are consistently followed by periods of decompensation. Tr. 916

("Mr. Howard has [experienced] repeated episodes of decompensating within the last year lasting from weeks to months at a time . . . Mr. Howard has had repeated episodes of relapses, each of extended duration. . . ."). Evidence of some basic functioning over a period of seven years cannot constitute persuasive contrary evidence to Dr. Fermo's opinion, given the nature of Howard's condition. Therefore, the ALJ's reliance on Howard's ADLs constitutes error.

The ALJ further relied on the fact that Dr. Fermo's opinion is based, at least in part, on the subjective complaints of Howard. The court does not find this fact to be persuasive contradictory evidence. To be sure, the thoughts and complaints of a mentally ill patient are central, and indeed necessary, to a treating physician's diagnosis of mental illness and his or her conclusions as to the patient's ability to work. Mental health professionals are educated and trained to decipher and evaluate patient complaints when diagnosing a patient. It should go without saying that mental health professionals do not take the subjective complaints of their patients at face value. Of course, the subjectivity of these complaints is heavily factored into their mental illness diagnoses and conclusions. To endorse this factor as compelling contrary evidence to a mental health professional's opinion would be to allow ALJs to call into question every opinion by a treating physician regarding mental health. This court declines to do so.

Moreover, such evidence has been deemed an insufficient basis for abandoning the treating physician rule. This court has found the fact that a physician's conclusion was based on the subjective complaints of his patient insufficient evidence to call his opinions into question, noting that "[a]dministrative law judges are [] prohibited from substituting their medical opinions for those of medical providers, which the Fourth

Circuit recently referred to as the prohibited practice of the ALJ playing doctor." Cohen v. Berryhill, 272 F. Supp. 3d 779, 782 (D.S.C. 2017) (quoting Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017)) (internal quotation marks omitted). Therefore, that Dr. Fermo's opinion is based on Howard's subjective complaints is an improper basis from which the ALJ accorded his opinion little weight.

Additionally, the absence of hospitalizations or emergency medical care in the past eight years and the stabilization of the Howard's medical condition cannot constitute persuasive contrary evidence for the purposes of the treating physician rule. Discussed above, Howard consistently experiences brief periods of stability that are invariably followed by periods of instability. Dr. Fermo's opinion is based, in part, on the fragility of Howard's mental condition and the fact that Howard does not have the coping mechanisms to endure the stresses associated with work. Tr. 911-12 ("I am concerned that should [Howard] try to work [] he would easily decompensate . . . Even without working, Howard struggles only with the minimalist type of stress for example [sic] in just coping with an extremely supportive family . . . [Howard] at times may show some partial response to treatment but with minimal stressors [he] shows the capacity to decompensate very easily."). The ability of Howard to live without hospitalizations, Dr. Fermo concludes, is a direct result of his continued treatment. Howard's lack of hospitalizations, therefore, is consistent with, not contrary to, Dr. Fermo's opinion. Therefore, the ALJ's reliance on Howard's improvement is not persuasive contrary evidence and does not support a deviation from the opinion of his treating physician.

Finally, the ALJ relied on Dr. Fermo's own treatment notes as evidence contrary to his medical opinion. In her opinion, the ALJ noted that Dr. Fermo's notes indicate

periods of treatment non-compliance, Tr. 27, 915; reports of Howard's condition temporarily stabilizing, Tr. 24, 778-79, 799, 835; instances of normal thought processes and thought content, Tr. 25, 778-79, 799, 835, 851-52, 858-59, 902; and an ability to concentrate and stay on task, Tr. 25, 626, 778-89, 835, 852, 902. Just as numerous in Dr. Fermo's treatment notes, however, are reports of psychosis, delusional behavior, Schizotypal personality traits, depressive tendencies, loss of functional abilities, anxiety, anger problems, inability to focus or stay on task, severe impairment of emotional functioning, etc. Fluctuating mental health is epitomic of mental illness, and this is particularly the case with Howard's illnesses. An ALJ cannot dredge up a physician's notations of positive aspects of a patient's mental health as a basis for rejecting his or her conclusions.

Mental illnesses are not readily diagnoseable from tangible facts the way that most physical ailments are. Psychologists and other mental health professionals diagnose and evaluate patients based on a multitude of factors that are discerned from subjective, often-conflicting sources. To isolate just one variable out of context and use it as a basis to discredit the conclusion of a medical professional is equivalent to the ALJ "playing doctor." Lewis, 858 F.3d at 869. The Fourth Circuit has made clear that the opinion of a non-professional may not be asserted over that of a physician. Id. Just as an ALJ may not point to one healthy tissue of a claimant's lung and conclude that a physician's diagnosis of black lung is unsupported, she may not point to a functioning mental process as evidence that a psychologist's opinion is incorrect. Extreme fluctuation is emblematic of mental illness. Dr. Fermo's treatment notes reflect the inconsistences inherent in metal illness. In dissecting Dr. Fermo's notes and giving weight to only those reports that

support her finding of no disability, the ALJ 'played doctor' and asserted her conclusions over those of a mental health professional. Therefore, the ALJ's reliance on the "inconsistencies" of Dr. Fermo's treatment notes was error. Because the ALJ had no legitimate evidentiary basis for deviating from the treating physician rule, the determination of the ALJ was error and remand of the matter for further consideration of Dr. Fermo's opinion is necessary.

Moreover, even if the court assumed that under the treating physician rule Dr. Fermo's opinion did not merit controlling weight, the ALJ's decision to accord his opinion little weight was nonetheless error. If a treating physician's opinion does not merit controlling weight, the ALJ is to evaluate it using the following evaluation factors: (1) whether the physician has examined the applicant; (2) the nature and extent of the treatment relationship; (3) the extent to which the opinion is supported by relevant medical evidence; (4) the extent to which the opinion is consistent with the record as a whole; (5) the relevance of the physician's medical specialization to the opinion; and (6) any other factor that tends to support or contradict the opinion. 20 C.F.R. § 404.1527(c); see SSR 96–2p; Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006). The Fourth Circuit has not mandated an express discussion of each factor, and another court in this district has held that "an express discussion of each factor is not required as long as the ALJ demonstrates that he applied the . . . factors and provides good reasons for his decision." Hendrix v. Astrue, 2010 WL 3448624, at *3 (D.S.C. Sept. 1, 2010); see § 404.1527(c)(2) (requiring ALJ to give "good reasons" for weight given to treating source's opinion). A district court will not disturb an ALJ's determination as to the weight to be assigned to a medical opinion, including the opinion of a treating physician, "absent some indication

that the ALJ has dredged up 'specious inconsistencies' . . . or has not given good reason for the weight afforded a particular opinion." <u>Craft v. Apfel</u>, 164 F.3d 624, 1998 WL 702296, at *2 (4th Cir. 1998) (per curiam) (unpublished table decision) (internal citation omitted).

The ALJ's opinion does not comport with the above factors. While an ALJ is not required to include an explicit discussion of the evaluation factors in her decision, she is nevertheless bound by the analytical framework they provide. Even a cursory analysis under the above evaluation factors leaves no doubt that Dr. Fermo's opinion merits significant weight. The evidence on which the ALJ relied in according Dr. Fermo's opinions little weight, discussed at length above, amount to "specious inconsistencies" that give the appearance of contradiction but do not in fact conflict with Dr. Fermo's comprehensive medical analysis and resulting opinion.

An explicit analysis of the evaluation factors make this point clear. The first and second factors, which consider the existence, nature, and extent of the doctor-pateint relationship weigh heavily in favor of according Dr. Fermo's opinion significant weight. Dr. Fermo has personally treated Howard on a consistent basis for five years. An ALJ must take this factor into consideration when analyzing a treating physician's opinion. <u>See</u> 20 C.F.R. § 404.1527(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion," as he has developed a "longitudinal picture."); <u>see also</u> <u>Stewart v. Berryhill</u>, 2019 WL 1866341, at *24 (D.S.C. Apr. 11, 2019), report and recommendation adopted sub nom. <u>Stewart v. Berrryhill</u>, 2019 WL 1863412 (D.S.C. Apr. 25, 2019) (finding reversible error in an ALJ's failure to consider this factor).

Likewise, the third factor, the extent to which Dr. Fermo's opinion is supported by relevant medical evidence, also weighs heavily in his favor. Dr. Fermo provided the Agency with over 200 pages of treatment notes, which contain evidence of Howard's symptoms and Dr. Fermo's medical analysis over a period of five years. Further, the evidence provided by other examining mental health professionals also supports Dr. Fermo's opinion. See Tr. 644-47 (report by consultant psychologist); 655-56 (report of Sandi Nelson, M.ed LPC). The fourth factor, which considers the extent to which the opinion is consistent with the record, also weighs heavily on the side of according Dr. Fermo's opinion significant weight. The record in this case is nearly 1,000 pages long, the vast majority of which provide evidence of the severity and debilitating nature of Howard's mental illnesses. To the extent that the ALJ has dredged up "inconsistencies" in the record, such inconsistencies are specious. Discussed at length above, while isolated evidence of cognitive aptitude and bouts of heathy mental functioning may seem inconsistent with Howard's inability to sustain work activity, they are wholly consistent with Dr. Fermo's opinion, which notes the intense fluctuation of Howard's condition, inherent in his mental illnesses. The fifth factor also weighs in Dr. Fermo's favor, as the record shows that Dr. Fermo specializes in mental health and has board certification in both general psychiatry and child and adolescent psychiatry. Therefore, the evaluation factors weigh heavily in favor of according Dr. Fermo's opinion significant weight. Thus, the ALJ's assignment of little weight to Dr. Fermo's opinion was error.

As noted by the Magistrate Judge, the ALJ's decision contains a discussion of Dr. Fermo's objective findings and medical opinions. Tr. 23-27. As required by SSR 96-2p, her decision contains specific reasons explaining why she accorded Dr. Fermo's

conclusions little weight. These reasons, however, were not based on persuasive contrary evidence and did not merit a departure from the treating physician rule. Further, even assuming the ALJ did not err in failing to accord Dr. Fermo's opinion controlling weight, her decision to accord it "little weight" is unjustified based on the factors discussed above. Therefore, the court cannot find the Commissioner's decision is based on substantial evidence because the ALJ has not explained adequately the contradictions or inconsistencies between Dr. Fermo's opinion and the evidence on which she relied. Thus, the court remands this matter back to the Commissioner for adjudication consistent with this opinion.

### B. Howard's Remaining Arguments

Because the court finds the ALJ's mistreatment of the treating physician's opinion a sufficient basis to remand the case to the Commissioner, the Court declines to specifically address Howard's additional allegation of error by the ALJ. However, upon remand, the Commissioner should take into consideration Howard's remaining allegation of error.[5]

---

[5] While the court will not go into an in-depth analysis of Howard's allegation that the ALJ's failure to recontact a treating physician was in error, it is worth noting that several courts have imposed a duty upon the ALJ to recontact a physician under similar circumstances. See Frazier v. Colvin, 2014 WL 279680, at *4 (D.S.C. Jan. 21, 2014); Gibson v. Berryhill, 2018 WL 777163, at *3 (S.D.W. Va. Feb. 8, 2018).

## IV.   CONCLUSION

Based on the foregoing, the court declines to adopt the Magistrate Judge's R&R, **REVERSES** the Commissioner's decision and **REMANDS** the matter back to the Commissioner for further administrative action consistent with this opinion.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**September 30, 2019**
**Charleston, South Carolina**